**Buddy WILLIAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 44910.**

Court of Criminal Appeals of Texas.

May 3, 1972.

Rehearng Denied June 21, 1972.

Hugh Anderson, Lubbock, for appellant.

Blair Cherry, Jr., Dist. Atty., and Richard Maxwell, Asst. Dist. Atty., Lubbock, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for statutory rape where the punishment was assessed by the jury at life imprisonment.

Initially, appellant contends the trial court erred in failing to sustain his challenge for cause to five prospective jurors who stated on voir dire examination they could not consider assessing the minimum punishment of five years if chosen as jurors and in the event of a verdict of guilty. He claims that as a result of such failure, he had not ten but five peremptory challenges, having to use five of such allotted challenges to strike these five disqualified jurors. Appellant apparently relies upon Article 35.16(C)(2), Vernon's Ann.C.C.P.

There are several reasons why there is no merit to appellant's contention.

First, these prospective jurors did not serve as jurors in this cause and there is no support in the record for appellant's assertion he used five peremptory challenges on these jurors.

Second, he does not show that as a result of an erroneous ruling on a challenge for cause he was forced to take an objectionable juror. See Bayless v. State, 166 Tex.Cr.R. 479, 316 S.W.2d 743 (1958); Teter v. State, 166 Tex.Cr.R. 489, 316 S.W. 2d 756 (1958); Gamez v. State, 171 Tex. Cr.R. 639, 352 S.W.2d 732 (1961).

Third, we observe that the general question addressed to the jury panel for the case as a whole which produced the answers complained of was not properly framed even though there was no objection

by the State. While disclaiming that he was setting forth the facts that would be proved, he did describe certain facts and asked if the prospective jurors could assess five years under those circumstances. This represents an improper attempt to commit prospective jurors as to what their verdict would be with regard to a particular fact situation.

Appellant's first ground of error is overruled.

The appellant also challenges the sufficiency of the evidence.

The State's evidence shows that the 13-year old prosecutrix frequented the service station operated by the 37-or 38-year old appellant in the City of Lubbock. It apparently was a favorite gathering place for certain teen-agers and some young people. On the afternoon of December 26, 1969, the prosecutrix helped 14-year old Gary Allison and 15-year old Matt Hinkle wash and wax a car. That night about 8 p. m., Gary Allison came to the prosecutrix's home and asked if she wanted to get a coke. She agreed and they entered a car driven by the appellant in which Matt Hinkle was a passenger. The foursome then drove to a liquor store where the appellant purchased some beer and one of the boys obtained some rum. They then drove to Slaton where they stopped at a cafe and a residence and drove east out of Slaton onto some back country roads where the car became stuck in some loose dirt or sand. At this point, appellant told the prosecutrix to get in the front seat with him, but she and Gary got out of the car and started walking away. The appellant followed, kicked the prosecutrix and grabbed her by the back of her hair and took her to the car where he forced her down on the front seat. He then placed a knife at the back of her neck and ordered the boys, who had gotten in the car, to get out again. They did. The appellant unzipped his pants and took prosecutrix's pants down or off and had sexual intercourse with her despite her screams and efforts to push him away. Subsequently, efforts were made to extract the car from the loose sand without success. The appellant then returned to the car and again had intercourse with the prosecutrix. Still later, a third act of intercourse occurred. Eventually, the appellant and the two boys were able to extract the car from the sand and they all drove to Slaton, then to Lubbock where the prosecutrix was returned home about 5:30 a. m. She slept late and after discussing the matter with some friends who had learned of the incident, she told her mother around 3 p. m. what had occurred. She was taken to a doctor and examined.

The appellant did not testify but called the examining doctor who testified that he found no bruises, cuts, tears, or injuries in the prosecutrix's vaginal area; that her hymen was still intact and there was no evidence of bleeding, and that he could not determine whether she had had sexual intercourse or had been raped. In support of his contention, he relies upon this testimony and that of the prosecutrix's that she didn't know how she knew she had been penetrated or how she knew that the appellant's sexual organ was inside of her. After testimony to three acts of sexual intercourse, the prosecutrix did, at one point on re-cross examination, testify:

"Q B_____, I believe you have not answered my question of how you knew that Buddy's male organ was inside your female organ.

". . . .

"A I don't know."

On direct examination, the prosecutrix repeatedly testified that the appellant had "raped" her. After she related that she knew what a man's sexual organ was and what was meant by sexual intercourse, the record reflects the following:

"Q Did he have sexual intercourse with you at that time?

"A. Yes.

". . . .

"Q Did his sexual organ penetrate yours at that time? (the first act)

"A Yes.

". . . .

"Q B_____, did Buddy Williams' male sexual organ penetrate your sexual organ?

"A I don't know.

"Q Did it go inside your sexual organ?

"A Yes.

"Q Could you feel it?

"A Yes."

The cross examination reflects the following:

"Q And all that time, his male organ was inside your female organ and he was making movements?

"A Yes.

". . . .

"Q How could you feel it if you say you felt his organ in your organ, how did you feel it, can you tell us that?

"A Because it hurt."

Gary Allison testified that he saw the appellant with his pants unzipped and later saw the appellant on top of the prosecutrix "going up and down."

We do not view the testimony of the prosecutrix, relied upon by the appellant, to indicate that there was no penetration but rather reflecting upon her ability to adequately describe just how she knew that it had occurred. The strongest testimony in appellant's favor came, of course, from the examining doctor. The physician did testify, however, on cross examination, that the intact hymen was one-half inch inside the vaginal opening and that it would be possible in sexual intercourse to penetrate the outer area of the vagina without rupturing the hymen. He further testified that while the hymen is normally broken by sexual intercourse, it might not be "if there is a small penis."

In Johnson v. State, 449 S.W.2d 65, 68 (Tex.Cr.App.1970), it was written:

"Although penetration must be proved beyond a reasonable doubt it does not have to be of any particular depth. Any penetration, no matter how slight, is sufficient to satisfy the requirements of Article 1187, Vernon's Ann.P.C. See Calhoun v. State, 134 Tex.Cr.R. 423, 115 S.W.2d 965; Lynch v. State, 150 Tex. Cr.R. 57, 199 S.W.2d 780. 'Penetration between the labia of the female's private parts by the male organ of the defendant is sufficient although the vagina was not entered or an act of intercourse was never completed.' 4 Branch's Ann.P.C., 2nd ed., Sec. 1977, p. 301."

See also Rhynes v. State, 479 S.W.2d 70 (Tex.Cr.App.1972).

■ Further, as a general rule, it is well established that it is not essential to a conviction that the testimony of the prosecutrix be corroborated in a prosecution for rape even though she may be under the age of 15 years, as the prosecutrix in the instant case. Uhl v. State, 479 S.W.2d 55 (Tex.Cr.App.1972); Johnson v. State, supra; 48 Tex.Jur.2d Rape § 76, p. 723. Under the circumstances, including the age of the prosecutrix, the delay in making an outcry would not require that her testimony be corroborated. Uhl v. State, supra; Lacy v. State, 412 S.W.2d 56 (Tex.Cr. App.1967); Ambrose v. State, 145 Tex.Cr. R. 1, 165 S.W.2d 188 (1942).

■ Considered in the light most favorable to the jury's verdict, we conclude the evidence is sufficient to sustain the conviction.

■ Next, appellant contends the court erred in failing to grant his motion to dismiss the prosecution since the State failed to prove venue in Lubbock County. This contention is based on the somewhat conflicting testimony of the prosecutrix and

Gary Allison about how long they had been driving after they left Slaton before the car became stuck and how long it took to get back to Slaton. Appellant argues that the offense could have occurred in the adjoining counties of Lynn, Garza or Crosby.

Phillips v. State, 459 S.W.2d 632 (Tex. Cr.App.1970), has been decided contrary to appellant's contention. There, it was stated:

"Venue in a criminal case is not an element of the offense charged and need not be established by evidence beyond a reasonable doubt. Curtis v. State, 167 Tex.Cr.R. 536, 321 S.W.2d 587; King v. State, 166 Tex.Cr.R. 231, 312 S.W.2d 501; 24 Tex.Jur.2d 418, Evidence—Section 740, and cases cited under Note 3.

"Under the express provisions of Art. 13.22 Vernon's Ann.C.C.P., rape may be prosecuted in the county in which it is committed, and when (as in Harris County) the judicial district comprises only one county, prosecution may be commenced and carried on in that county, if the offense be committed there, or in any adjoining county.

"Further, Art. 13.25 V.A.C.C.P. relating to proof of venue provides:

'In all cases mentioned in this Chapter, the indictment or information, or any proceeding in the case, may allege that the offense was committed in the county where the prosecution is carried on. To sustain the allegation of venue, it shall only be necessary to prove that by reason of the facts in the case, the county where such prosecution is carried on has jurisdiction.'

"In view of the rules stated, proof by a preponderance of the evidence that the rape was committed in Harris County, or in an adjoining county, would be sufficient proof of venue."

See also Stanley v. State, 471 S.W.2d 72 (Tex.Cr.App.1971).

Appellant also complains of the court's failure to charge on the lack of circumstantial evidence "concerning the actual penetration of the complaining witness' sex organs" and to "whether any offense was committed by the defendant in Lubbock."

 It is well established that the court need not charge on the law of circumstantial evidence where the State's evidence is direct or where the facts proved are in such close juxtaposition to the main fact to be proved to be equivalent to direct testimony. 31 Tex.Jur.2d Instructions § 123, pp. 683–685; Livingston v. State, 445 S.W.2d 528 (Tex.Cr.App.1969). In view of our earlier discussion as to testimony concerning penetration, the court did not err in failing to charge on circumstantial evidence in that regard. The prosecutrix's testimony that she was penetrated was direct evidence.

Further, "[a] charge on circumstantial evidence is inapplicable on the question of venue. Therefore, the instruction is not necessary where the question of venue is the only disputed issue." 31 Tex.Jur.2d Instruction § 122, p. 682.

Appellant also urges that the court erred in refusing to recess the trial in order to permit his examination by Dr. Lauf to determine whether his male sex organ was of such size that it could not have entered the female sex organ of the prosecutrix without rupturing the hymen.

As Dr. Lauf, who had examined the prosecutrix, was leaving the witness stand, appellant's counsel asked the court for sufficient time to have the doctor examine the appellant in an adjoining room for the purpose of subsequently testifying as to the size of his penis. The request for a recess was denied.

 The granting of a recess rests within the sound discretion of the trial court. Appellant has made no showing that he was prevented from having an examination made or from offering other

evidence relating to the subject matter in question. No error is perceived.

◼ In several grounds of error, appellant complains of the exclusion of testimony of certain witnesses at the penalty stage of the trial. This testimony related to the acts and conduct of the 13-year old prosecutrix prior to the alleged offense. These witnesses related they had seen the prosecutrix at a party or parties where she had a beer or two and was "hugging and kissing a boy." We find none of the evidence proffered, much of it hearsay, to be relevant to any issue at the hearing on punishment. *Cf.* White v. State, 444 S.W.2d 921 (Tex.Cr.App.1969).

◼ In two additional grounds of error, the appellant complains of the exclusion of the testimony of two psychologists at the penalty stage of the trial. Dr. Jones, one of these witnesses, testified that appellant was not "insane" and was competent to stand trial, but that he might benefit from treatment for his mental condition. The other witness basically testified as to appellant's statements made to her several months after the alleged offense concerning his subsequent acts and his request for assistance.

In Allaben v. State, 418 S.W.2d 517 (Tex.Cr.App.1967), this court said:

"Evidence to be offered at the hearing on punishment pursuant to the provisions of Article 37.07, Section 2(b), Vernon's Ann.C.C.P. is by no means limited to the defendant's prior criminal record, his general reputation and his character. Evidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible."

See also Article 37.07, supra, as amended 1967.

Even if it can be argued that such testimony was admissible before the jury, we conclude that such action does not call for reversal. Allaben v. State, supra; Culvahouse v. State, 440 S.W.2d 637 (Tex.Cr.App.1969); Coleman v. State, 442 S.W.2d 338 (Tex.Cr.App.1969); Miller v. State, 442 S.W.2d 340 (Tex.Cr.App.1969). See also White v. State, supra.

Next, appellant contends the court erred in overruling his motion for new trial after two jurors had testified that one of the jurors had stated during their deliberations that he personally knew all of the dirt roads east of Slaton ended in Lubbock County.

◼ Juror Jones testified that a road map introduced into evidence by the appellant was mentioned and he heard one juror say that "the majority of roads, dirt roads in that particular area ended at the canyon which was in Lubbock County." Juror Burford related there was a brief discussion concerning the county boundary line but he was unsure that any juror had stated that all roads east of Slaton ended at the caprock in Lubbock County although he thought someone had said something to that effect. Juror Huneke, foreman of the jury, denied that any such statement was made. The court overruled the motion. Where the evidence is conflicting as to alleged jury misconduct, the ruling of the trial court on the motion for new trial is ordinarily conclusive on appeal. Simpson v. State, 169 Tex.Cr.R. 242, 332 S.W.2d 732 (1960); Boatwright v. State, 169 Tex. Cr.R. 280, 343 S.W.2d 707 (1960). 41 Tex. Jur.2d New Trial § 215, p. 466.

◼ Still further, the appellant complains of the trial court's action in refusing to allow him to interrogate the jurors at the hearing on motion for new trial concerning a separate matter of jury misconduct not supported by his motion and affidavit. The court's action was not error and appellant concedes the same, but contends, without citation of authority, he was deprived of due process. We do not agree.

The judgment is affirmed.