# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00438-CR

**Christopher Kotaska, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NO. 0986049, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING**

This is an out-of-time appeal granted by the Court of Criminal Appeals following a post-conviction writ of habeas corpus based on ineffective assistance of counsel for failure to give notice of appeal. *Ex parte Kotaska*, No. 74,130 (Tex. Crim. App. June 27, 2001) (not designated for publication).

Appellant Christopher William Kotaska was convicted of capital murder. The jury assessed his punishment at life imprisonment.

## Points of Error

Appellant advances two points of error. First, appellant contends that the "trial court erred to admit, over appellant's timely and specific objection, State's exhibits 56-72 [photographs]."

Second, appellant urges that the "trial court erred in permitting the State to contract with the jury panel." We will affirm the judgment of the trial court.

## Background

Appellant does not challenge the legal or factual sufficiency of the evidence to support his conviction. A brief recitation of the facts will, however, place the points of error in proper perspective.

The record reflects that the twenty-two-year-old appellant roomed with David Ludwick and Ryan Hanson in Austin. They had discussed robbing someone in order to obtain money to go to Los Angeles, California, where Ludwick's sister lived. On Friday, January 16, 1998, the three men went to the Rainbow Cattle Company where they encountered the victim, John Davis Cavness, Jr. Cavness bought the men several rounds of drinks. Shortly after midnight on January 17, Cavness and the three men left the bar in a taxi and went to Cavness's home at 514 El Paso Street in Austin. What occurred next is principally derived from appellant's testimony at Ludwick's trial, his extra-judicial confession, and his trial testimony. Appellant testified that upon entering Cavness's house, he and Cavness went into one of the bedrooms. Appellant took off his shirt and shoes and Cavness took off his shoes, apparently in preparation to have sex. Appellant had a beer bottle with which he intended to hit Cavness on the head in order to carry out the robbery. About this time, Ludwick came into the bedroom with a hammer behind his back. Cavness saw the hammer and ran screaming from the room followed by Ludwick. Appellant heard the hammer blows to Cavness's head. When appellant came out of the bedroom, Cavness was lying between the kitchen and living room. He was still alive. Ludwick took a knife from the kitchen and cut Cavness's throat. Appellant, Ludwick, and Hanson gathered up some of Cavness's property and credit cards, took

2

Cavness's truck, and returned to the apartment where they had been living. After packing their belongings, they drove Cavness's truck to El Paso where they abandoned it and took a bus to Los Angeles. After several days, appellant hitchhiked north to Sacramento, California. Appellant was arrested there several months later and returned to Austin for trial. Appellant's fingerprints were found on the beer bottle left behind in Cavness's house and Ludwick's and Hanson's fingerprints were lifted from certain locations in the house. Other testimony showed the hasty departure of appellant, Ludwick and Hanson from Austin early on January 17, 1998 in a truck. The departure was so hasty, appellant left his wallet at the apartment where he had been staying.

**Photographs**

In his first point of error, appellant contends that the trial court erred in admitting into evidence, over objection, State's exhibit numbers fifty-six to seventy-two, photographs of Cavness's body taken at the direction of the pathologist.

The photographs were offered together during the direct examination of Dr. Elizabeth Peacock, the assistant medical examiner, who had performed the autopsy, and who testified as to the cause of death. Dr. Peacock testified that the photographs were taken *prior* to the autopsy and reflected the various wounds inflicted by a blunt instrument, possibly a hammer, the knife wounds to the neck, and the defensive wounds on the deceased's hands.

Appellant, who had pleaded "not guilty," objected to the introduction of the exhibits: "We don't believe the cause of death is at issue in this case, we do object to the photographs as unnecessary and superfluous." The objection was overruled, but before the photographs were allowed to be seen by the jury, appellant again objected that the photographs "would only offer or

3

serve to inflame the emotions of the jury, serve no probative value in this case." The trial court made an in-camera inspection of the photographs and then overruled the second objection.

A photograph is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. The admission of photographs into evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Wyatt v. State*, 23 S.W.2d 18, 29 (Tex. Crim. App. 2000); *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993). A trial court's decision to admit photographs will be reversed only if the decision was outside the zone of reasonable disagreement. *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992).

An examination of appellant's objections reveal that they were directed to the relevancy of the photographs. *See* Tex. R. App. P. 401. They were introduced during the State's case-in-chief in this contested case when the State had the burden to prove beyond a reasonable doubt all the elements of the capital murder offense as alleged. Dr. Peacock testified as to the extent of the injuries suffered by Cavness, which were reflected in the photographs. She testified that the cause of death was the cutting of the deceased's throat, but observed that the blows to the head, apparently by a hammer, as reflected by the photographs would also have been fatal wounds. The photographs were an aid to the jury in determining the manner and means of Cavness's death, the force used, etc. *See Williams v. State*, 958 S.W.2d 186, 195 (Tex. App.—Texarkana 1997, no pet.). Moreover, photographs are generally admissible where verbal testimony about the same matter is admissible. *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996); *Long v. State*, 823 S.W.2d 259, 271-72 n.18 (Tex. Crim. App. 1991). The photographs met the relevancy test.

4

Nevertheless, appellant argues that his objections were sufficient to invoke Rule 403; that even if the photographs were relevant evidence, their probative value was outweighed by the danger of unfair prejudice;[1] and the trial court erred in admitting "extremely gruesome autopsy pictures."[2]

The State counters that a complaint on appeal must comport with the trial objection or nothing is presented for review. *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1999); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986). An objection stating one legal basis may not be used to support a different legal theory on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). The State contends that the defense objections were made on relevancy grounds and that such objections do not preserve error concerning Rule 403. *Cf. Medina v. State*, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999) (relevancy objection does not preserve error concerning Rule 404 and extraneous offenses). We agree. Appellant did not mention Rule 403 in his objections or put the trial court on notice that he wanted the court to balance probative value against prejudicial effect. *Comacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1992).

If it can be stated that Rule 403 was invoked, however, our review is limited to determining whether the probative value of the photographs is substantially outweighed by the danger

---

[1] Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by consideration of undue delay or needless presentation of cumulative evidence.

Tex. R. Evid. 403.

[2] Appellant is mistaken. The photographs were not post-autopsy pictures.

5

of unfair prejudice. *Wyatt*, 23 S.W.3d at 29. Rule 403 carries with it the presumption that relevant evidence will be more probative than prejudicial. *Jones*, 944 S.W.2d at 652. There are several factors to be considered in making the required determination. These include the number of exhibits offered, their size, whether the photographs are in color or in black or white, whether they are close-up pictures, their detail, whether the body was naked or clothed, and whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to the accused's detriment. *Reese v. State*, 33 S.W.3d 238, 241 (Tex. Crim. App. 2000). These factors are not exclusive. *Wyatt*, 23 S.W.3d at 29.

There were seventeen 8½" by 11" black and white photographs, close-up, of the deceased's head, face, neck, hands, and one of his mouth, showing the wounds inflicted. In one photograph, a portion of the deceased's back fully clothed was shown. There were no full body photographs. Only head hair in patches had been shaved to more clearly show the head wounds. The dark, apparently bloody wound in the neck was visible in a black and white picture. The photographs portrayed no more than the gruesomeness of the injuries inflicted. *Wyatt,* 23 S.W.3d at 30; *Narvaiz*, 840 S.W.2d at 429. A trial court does not err merely because it admits into evidence photographs which are gruesome. *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995); *Sexton v. State*, 51 S.W.3d 604, 615 (Tex. App.—Tyler 2000, pet. ref'd). The photographs no were no more gruesome than the facts of the offense itself. *Sexton*, 51 S.W.3d at 616. We conclude that the trial court did not abuse its discretion in admitting the photographs regardless of the view taken or the nature of appellant's objections. Point of error one is overruled.

**Jury Commitment**

In the second point of error, appellant contends that the "trial court erred in permitting the State to contract with the jury panel." Appellant relies upon the rule prohibiting attorneys from attempting to commit prospective jurors to a certain verdict based on a particular set of facts. *See Williams v. State*, 481 S.W.2d 119, 121 (Tex. Crim. App. 1972).[3] "The policy behind this rule is that voir dire is designed to insure impartial jurors, but if jurors are forced to commit themselves prior to trial as to how they would consider certain facts or testimony, then the case is being tried on voir dire and the jurors are no longer impartial." *Brown v. State*, 674 S.W.2d 443, 447 (Tex. App.—Dallas 1984, *aff'd*, 741 S.W.2d 453 (Tex. Crim. App. 1987).

It is proper to use hypothetical fact situations to explain the application of the law, but it is improper to inquire how a prospective juror would respond to particular circumstances presented in a hypothetical question. *Atkins v. State*, 951 S.W.2d 787, 789 (Tex. Crim. App. 1997); *Cuevas v. State*, 742 S.W.2d 331, 336 n.6 (Tex. Crim. App. 1987); *Cadoree v. State*, 810 S.W.2d 786, 789 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd); *see also Paustian v. State*, 992 S.W.2d 625, 627-28 ( Tex. App.—El Paso 1999, pet. ref'd).

"It is difficult to articulate general guidance on the matter of when a question becomes objectionable because it attempts to commit a panelist to a particular view of the case." 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 35.43 (2d ed. 2001). In *Standefer v. State*, 59 S.W.3d 177 (Tex. Crim. App. 2001), a five-to-four decision, with two judges concurring to constitute the majority, the court attempted to lay down a bright line for determining what are "commitment questions." The court, *inter alia*, held that a "question can be

_____

[3] "[A]n attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts." *Allridge v. State*, 850 S.W.2d 471, 480 (Tex. Crim. App. 1991).

a commitment question if the question asks the prospective juror to set the hypothetical parameters for his decision-making." *Id*. at 180. The court also noted that many questions in the voir dire examination of a jury panel are not commitment questions and are not covered by the opinion. *Id*.

In the instant case, the prosecutor used hypotheticals to explain the law of parties to the jury. *See* Tex. Pen. Code. Ann. § 7.02 (West 1994). In the principal hypothetical situation utilized, the prosecutor cast himself as the primary actor in a planned robbery of the court reporter to obtain her stenographic machine while co-counsel as a "party" waited in the "get-a-way" car outside the courthouse. A murder occurred when the court reporter struggled to save her machine and the prosecutor shot her. Additional facts were added to the hypothetical—that co-counsel was unaware that the prosecutor was armed prior to the robbery, or that co-counsel knew that the prosecutor was armed with a weapon at the time. The prosecutor asked questions relating to the law of parties and some prospective jurors asked questions. After approximately eighteen pages of the court reporter's record, reflecting the above-described interrogation, appellant interposed the objection upon which he relies:

> Objection, your Honor. Again, counsel is trying to pre-commit the jury to a certain way of thinking with regard to an assumption that one should have anticipated the lethal outcome of the robbery.

The objection was overruled. Appellant objected only after a considerable amount of interrogation by the prosecutor. As in *Wheatfall v. State*, 882 S.W.2d 829, 833 (Tex. Crim. App. 1994), the objection to the attempt to commit a juror to a specific set of facts was not timely. Tex. R. App. P. 33.1(a)(1). The objection must be made at the earliest opportunity. *Martinez v. State*, 867 S.W.2d 30, 35 (Tex. Crim. App. 1993); *Zimmerman v. State*, 860 S.W.2d 89, 100 (Tex. Crim. App. 1993).

8

In the absence of a timely objection, nothing is presented for review. *See Skidmore v. State*, 838 S.W.2d 748, 752 (Tex. App.—Texarkana 1992 pet. ref'd).

Moreover, appellant does not separate the wheat from the chaff. In his brief, appellant sets out several pages of voir dire interrogation prior to his objection, but he makes no effort to single out which question or questions were improper commitment questions. He cites as authority four cases generally condemning commitment questions, but does not apply them to any particular question asked. There has been no compliance with our briefing rules. *See* Tex. R. App. P. 38.1(h). An appellate court is not required to brief appellant's contentions for him. *Garcia v. State*, 887 S.W.2d 862, 882 (Tex. Crim. App. 1998); *see also Alvarado v. State*, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995). Still further, appellant's trial counsel in his voir dire examination of the jury panel borrowed the prosecutor's hypothetical, interrogated the jury panel in the same manner as the prosecutor, and invoked similar questions and statements from certain members of the jury panel. The second point of error is overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices Kidd, Patterson and Onion[*]

Affirmed

Filed: April 11, 2002

Do Not Publish

---

\*   Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).